Laura A. Stoll (SBN 255023)
*LStoll@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 South Figueroa Street, 41st Floor
Los Angeles, CA 90017
Tel.: (213) 426-2500
Fax: (213) 623-1673

*Attorney for Defendants*
*Nationstar Mortgage, LLC and Mr. Cooper*
*Group, Inc.*

*Additional counsel listed below*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| **ADRIAN SCOTT RANDLES,** individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| **MR. COOPER GROUP, INC.,** a Delaware Corporation, and **NATIONSTAR MORTGAGE, LLC, d/b/a MR.   COOPER,** a Delaware limited liability company, | ) ) ) ) ) ) |
| Defendant. | ) ) ) |

1:24-cv-00177-KES-SKO

Date: April 17, 2024
Time: 9:30 AM
Courtroom: 6, 7th Floor
Judge: Hon. Kirk E. Sherriff

## DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, PURSUANT TO 28 U.S.C. § 1404(A), OR IN THE ALTERNATIVE, PURSUANT TO THE FIRST-FILED DOCTRINE

1

## <u>TABLE OF CONTENTS</u>

2

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

      I.    Plaintiff's Opposition Fails to Rebut That The § 1404(a) Factors Favor Transfer to
          Texas. ...................................................................................................................... 2

      II.   The First-Filed Doctrine and Judicial Comity Support Transferring this Action to the
          Northern District of Texas. ................................................................................... 12

CONCLUSION ................................................................................................................. 15

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Ace Mold (Heifei) Co. v. AliphCom*,
    No. 2:15-cv-08127, 2016 WL 8252923 (C.D. Cal. Oct. 17, 2016) ................................... 6, 10

5

6

*Adoma v. Univ. of Phoenix, Inc.*,
    711 F. Supp. 2d 1142 (E.D. Cal. 2010) ................................................................. 13

7

8

*Alcatel Lucent USA, Inc. v. Dugdale Commc'ns, Inc.*,
    No. 2:09-cv-02140, 2010 WL 883831 (C.D. Cal. Mar. 5, 2010)..................................... 7

9

10

*Ari v. Archon Info. Sys., LLC*,
    No. 5:10-cv-01572, 2011 WL 13223874 (C.D. Cal. Mar. 2, 2011)........................................ 8

11

*Barnstormers, Inc. v. Wing Walkers, LLC*,
    No. 3:09-cv-02367, 2010 WL 2754249 (S.D. Cal. July 9, 2010) ........................................ 8

12

13

*Barroca v. United States*,
    No. 3:19-cv-00699, 2019 WL 5722383 (N.D. Cal. Nov. 5, 2019) ....................................... 10

14

15

*D.L. Markham, DDS, MSD, Inc. v. Variable Annuity Life Ins. Co.*,
    No. 2:21-cv-00007, 2022 WL 891290 (E.D. Cal. Mar. 25, 2022)........................................ 7

16

*Davis v. Prop. & Cas. Ins. Co. of Hartford*,
    No. 4:05-cv-00002, 2005 WL 1694083 (D. Alaska July 14, 2005), (Opp. ) .......................... 2

17

18

*Florence v. Order Express, Inc.*,
    No. 1:22-cv-07210, 2023 WL 3602248 (N.D. Ill. May 23, 2023).......................................... 3

19

20

*Gerson v. Logan River Acad.*,
    No. 2:19-cv-05008, 2020 WL 473134 (C.D. Cal. Jan. 29, 2020)........................................ 8

21

*Green Aire for Air Conditioning W.L.L. v. Salem*,
    No. 1:18-cv-00873, 2020 WL 4734909 (E.D. Cal. Aug. 14, 2020)...................................... 10

22

23

*Griffey v. Magellan Health Inc.*,
    562 F. Supp. 3d 34 (D. Ariz. 2021).......................................................................... 3

24

*Hawkins v. Gerber Prods. Co.*,
    924 F. Supp. 2d 1208 (S.D. Cal. 2013) ............................................................... 4, 5

25

26

*Hope v. Lunarlandowner.com, Inc.*,
    No. 2:20-cv-01783, 2022 WL 597579 (E.D. Cal. Feb. 28, 2022) ..................................... 3, 11

27

28

*Jarvis v. Marietta Corp.*,
    No. 3:98-cv-04951, 1999 WL 638231 (N.D. Cal. Aug. 12, 1999) ...................................... 12

ii

*Jovel v. i-Health, Inc.*,
    No. 2:12-cv-05526, 2012 WL 5470057 (C.D. Cal. Nov. 8, 2012) ......................................... 6

*Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
    787 F.3d 1237 (9th Cir. 2015)................................................................................................. 14

*Lawton v. Hyundai Motor Am., Inc.*,
    No. 8:23-cv-01797, 2024 WL 1135734 (C.D. Cal. Feb. 8, 2024) ........................................ 2

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987)................................................................................................. 4, 6

*Mack v. Amazon.com, Inc.*,
    No. 2:17-cv-02515, 2017 WL 8220436 (C.D. Cal. Sept. 19, 2017) ..................................... 13

*Meza v. Procter & Gamble Co.*,
    No. 5:23-cv-00091, 2023 WL 3267861 (C.D. Cal. Apr. 27, 2023) ...................................... 6

*Mina v. Red Robin Int'l, Inc.*,
    No. 2:18-cv-09472, 2020 WL 4037163 (C.D. Cal. Mar. 3, 2020)........................................ 4

*N. Bay Credit Union v. MRB Direct*,
    No. 8:23-cv-01951, 2024 WL 1136137 (C.D. Cal. Jan. 26, 2024) ...................................... 11

*Nat'l Fire Ins. Co. of Hartford v. UPS Freight, Inc.*,
    No. 5:16-cv-04785, 2017 WL 1927683 (N.D. Cal. May 10, 2017)....................................... 9

*In re Nissan N. Am., Inc. Litig.*,
    No. 3:18-cv-07292, 2019 WL 4601557 (N.D. Cal. Sept. 23, 2019) ...................................... 7

*Norwood v. Child. & Youth Servs. Inc.*,
    No. 2:10-cv-7944, 2011 WL 13130697 (C.D. Cal. Apr. 25, 2011) ....................................... 2

*Peace v. Parascript Mgmt., Inc.*,
    No. 2:12-cv-09663, 2013 WL 12137565 (C.D. Cal. Mar. 18, 2013)..................................... 10

*Romoff v. Johnson & Johnson Consumer Inc.*,
    No. 3:22-cv-00075, 2022 WL 3905301 (S.D. Cal. Aug. 26, 2022)..................................... 5, 6

*Shanze Enters., Inc. v. Am. Cas. Co. of Reading, PA*,
    No. 2:14-cv-02623, 2015 WL 1014167 (E.D. Cal. Mar. 5, 2015)....................................... 9

*Shultz v. Hyatt Vacation Mktg. Corp.*,
    No. 5:10-cv-04568, 2011 WL 768735 (N.D. Cal. Feb. 28, 2011) ....................................... 2

*Smith v. Oakley Transp., Inc.*,
    No. 3:19-cv-05854, 2020 WL 563076 (N.D. Cal. Jan. 30, 2020).......................................... 11

*Sporn v. TransUnion Interactive, Inc.*,
    No. 4:18-cv-05424, 2019 WL 151575 (N.D. Cal. Jan. 10, 2019)......................................... 15

iii

*Stevens v. Warner Music Grp. Corp.*,
   No. 2:20-cv-11805, 2021 WL 9958639 (C.D. Cal. Feb. 24, 2021) ........................... 13, 14, 15

*Szegedy v. Keystone Food Prods., Inc.*,
   No. 2:08-cv-05369, 2009 WL 2767683 (C.D. Cal. Aug. 26, 2009) ........................................ 3

*Tatum v. Schwartz*,
   No. 2:06-cv-01440, 2007 WL 419463 (E.D. Cal. Feb. 5, 2007) ........................................... 11

*Tirado v. Victoria's Secret Stores, LLC*,
   No. 1:21-cv-00636, 2023 WL 2466290 (E.D. Cal. Mar. 10, 2023)....................................... 14

*Tropos Networks, Inc. v. IPCO, LLC*,
   No. 3:05-cv-04281, 2006 WL 1883316 (N.D. Cal. July 7, 2006) ........................................ 11

*Trouville v. Reprosource Fertility Diagnostics, Inc.*,
   No. 1:23-cv-00080, 2024 WL 1181940 (E.D. Cal. Mar. 19, 2024)....................................... 15

*In re Waste Mgmt. Data Breach Litig.*,
   No. 1:21-cv-06147, 2022 WL 561734 (S.D.N.Y. Feb. 24, 2022) ........................................... 3

### INTRODUCTION

There have been twenty-seven putative class actions filed against Mr. Cooper in the wake of the Cyber Attack.[1]  The first twenty-six filed cases have already been consolidated into the Consolidated Action in the Northern District of Texas.  Plaintiff attempts to distinguish this case, filed last, from the Consolidated Action by arguing in opposition that Plaintiff's decision to bring his case in California and limit it to a California-only class should alone overcome any factors that weigh in favor of transfer under Section 1404(a), and makes this case somehow unique among the consolidated cases.

However, Plaintiff does not (and cannot) articulate a legal basis or compelling factual basis for this case to remain in the Eastern District of California rather than the Northern District of Texas.  Despite his best efforts to construe the Section 1404 factors in his favor, those factors predominantly favor transfer.  Furthermore, and contrary to the claim that he did not engage in forum shopping, Plaintiff filed this case in California while fully knowing twenty-six cases were pending in the Northern District of Texas, and that those cases asserted claims on behalf of the same putative class members as here.  That decision to *avoid* Texas cuts against Plaintiff's position that the Court should defer to his choice of forum, and further warrants transfer under Section 1404.

Transfer is also warranted under the first-filed doctrine because, at its core, this case is no different than each of the twenty-six first-filed cases pending in Texas:  all concern the same factual event (the Cyber Attack); will require access to the same evidence from Mr. Cooper; concern similar claims alleging the same issues regarding Mr. Cooper's security practices and procedures; and purport to represent overlapping putative class members.  Therefore, this Court should grant the Motion and transfer this case to the Northern District of Texas.

---

[1] All defined terms referenced herein have the same meaning as in Defendants' Memorandum of Points and Authorities in Support of the Motion to Transfer Venue (the "Motion," ECF No. 15-1).

# ARGUMENT

**I.** **Plaintiff's Opposition Fails to Rebut That The § 1404(a) Factors Favor Transfer to Texas.**

Rather than attempt to engage with Mr. Cooper's showing that the Section 1404 factors favor transferring this action to Texas, Plaintiff makes a surface-level attempt to construe the factors in his favor, going so far to rely on factors that have no bearing on this lawsuit. His efforts fail to justify keeping this lawsuit in California.

***The location where the agreements were negotiated or executed.*** Plaintiff asserts that the location where the relevant agreements were negotiated and executed favors against transferring this action because "Plaintiff and each member of the alleged Class are California residents who negotiated and executed mortgage loan agreements with Mr. Cooper (or agreements that Mr. Cooper subsequently acquired from another lender) in California and in relation to California properties." Opp. at 6.[2] Contrary to Plaintiff's assertion, this factor is irrelevant. Plaintiff brings a statutory claim sounding in tort, not a contract claim, and so this factor "is inapplicable to this case because there are no agreements at issue." *Lawton v. Hyundai Motor Am., Inc.*, No. 8:23-cv-01797, 2024 WL 1135734, at *2 (C.D. Cal. Feb. 8, 2024); *Norwood v. Child. & Youth Servs. Inc.*, No. 2:10-cv-7944, 2011 WL 13130697, at *10 (C.D. Cal. Apr. 25, 2011) ("Because Plaintiffs brings tort claims, not contract claims, this factor is irrelevant." (citing *Shultz v. Hyatt Vacation Mktg. Corp.*, No. 5:10-cv-04568, 2011 WL 768735, at *4 n.1 (N.D. Cal. Feb. 28, 2011)). Indeed, the one case cited by Plaintiff in support of this factor, *Davis v. Prop. & Cas. Ins. Co. of Hartford*, No. 4:05-cv-00002, 2005 WL 1694083 (D. Alaska July 14, 2005), (Opp. at 7), involved contract claims (unlike here), and thus the location where that contract was negotiated and executed was relevant

---

[2] Plaintiff overstates the connection between the class and the state of California. Not all members of the putative class "are California residents who purchased properties in California," as Plaintiff alleges. Opp. at 7. The class is defined as "All persons residing in California…", without regard to whether the putative class member purchased a property or negotiated a contract in California. Compl. ¶ 46.

to the inquiry (unlike here).  This factor gives no weight against transferring this Action to the Northern District of Texas.

*Familiarity with governing law.*  Plaintiff next contends the second factor—the state most familiar with the governing law—"weighs heavily against transferring the case to Texas" because this case involves a single claim under the CCPA.  Opp. at 7.  Courts, however, routinely deem this factor to be neutral in cases involving a state statute, when both jurisdictions are capable of interpreting the statute, just as Plaintiff concedes here.  *See, e.g.*, *Hope v. Lunarlandowner.com, Inc.*, No. 2:20-cv-01783, 2022 WL 597579, at *6 (E.D. Cal. Feb. 28, 2022) (finding familiarity with governing law factor neutral when "courts in each jurisdiction are fully capable of deciding issues arising under both California and Florida law"); *Szegedy v. Keystone Food Prods., Inc.*, No. 2:08-cv-05369, 2009 WL 2767683, at *7 (C.D. Cal. Aug. 26, 2009) (finding "[t]he judges in each jurisdiction are fully capable of deciding issues under both California and Pennsylvania law" and this factor did not weigh either for or against transfer).

The Court in the Northern District of Texas presiding over the Consolidated Action—Chief District Judge David C. Godbey—is fully capable of deciding issues under the CCPA, as other courts outside of California routinely do.[3]  Indeed, that Court will very likely decide issues under a multitude of state statutes, including, specifically, the Illinois Consumer Fraud and Deceptive Business Practices Act;[4] the Illinois Uniform Deceptive Trade Practices Act;[5] the Missouri

---

[3] *See, e.g.*, *Florence v. Order Express, Inc.*, No. 1:22-cv-07210, 2023 WL 3602248, at *7 (N.D. Ill. May 23, 2023); *In re Waste Mgmt. Data Breach Litig.*, No. 1:21-cv-06147, 2022 WL 561734, at *6 (S.D.N.Y. Feb. 24, 2022), *appeal docketed*, No. 22-41 (2d Cir. Mar. 25, 2022); *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 57 (D. Ariz. 2021).

[4] *Archer v. Mr. Cooper Grp., Inc.*, 3:23-cv-02873-N; *Debowczyk v. Mr. Cooper Grp., Inc.*, 3:24-cv-00096-N; *Siegal v. Mr. Cooper Grp. Inc.*, 3:23-cv-02485-N.

[5] *Archer v. Mr. Cooper Grp., Inc.*, 3:23-cv-02873-N.

3

Merchandising Practices Act;[6] the Washington Consumer Protection Act;[7] and the New York Deceptive Practices Act.[8]

**Plaintiff's choice of forum.**   Plaintiff's position that his chosen forum is entitled to deference because there is no evidence of forum shopping (Opp. at 7-8), overstates both the law and the facts.  Minimal deference to a plaintiff's chosen forum is not limited to instances of overt forum shopping, as Plaintiff suggests.  Rather, because this is a class action, it well-settled that a plaintiff's chosen forum is given less weight, even absent evidence of forum shopping.  *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("when an individual . . . represents a class, the named plaintiff's choice of forum is given less weight"); *Mina v. Red Robin Int'l, Inc.*, No. 2:18-cv-09472, 2020 WL 4037163, at *4 (C.D. Cal. Mar. 3, 2020) ("Plaintiff brings a nationwide class action, and a district court accords 'minimal consideration' to a plaintiff's choice of forum in representative actions, even when the plaintiff chooses his or her home forum." (citation omitted)).  Furthermore, "if the transactions giving rise to the action lack a significant connection to the plaintiff's chosen forum, the plaintiff's choice of forum is given considerably less weight." *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1215 (S.D. Cal. 2013) (citation omitted).

The Court's analysis in *Hawkins v. Gerber*, a false advertising action, is instructive on this issue.  While "[o]n the surface, forum shopping does not appear to be an issue because Plaintiff has limited the class definition to only California plaintiffs," the court in *Hawkins* emphasized that the consolidated case in the District of New Jersey—where the defendants sought to transfer the case— specifically encompassed a class of California plaintiffs, and plaintiff could not provide "any persuasive reasons as to why the class has been artificially split into two sub-classes, the California plaintiffs and the non-California 'nationwide' sub-class." *Hawkins*, 924 F. Supp. 2d at 1215.  The

---

[6] *Hughes v. Nationstar d/b/a Mr. Cooper*, 3:24-cv-00085-N.
[7] *Randall v. Mr. Cooper Grp., Inc*., 3:23-cv-02507-N.
[8] *Turturro v. Mr. Cooper Grp., Inc.*, 3:23-cv-02572-N.

4

court further highlighted that "in a false advertising action, the heart of the matter lies where the marketing and manufacturing decisions were made, which is typically at Defendant's headquarters" in New Jersey.  *Id.*  In light of this, "and because this case involves class action litigation, the Court [found] that Plaintiff's choice of forum [was] entitled to very little weight." *Id.*

Plaintiff's chosen forum is equally entitled to minimal deference in this class action for the same reasons.  His response, that "a considerable portion of the operative facts occurred in this District" (Opp. at 8) has no basis.  First, he seeks to represent a class of California residents, which includes California residents statewide and outside of this District.  Second, as discussed above, *supra* at 2, the connection to this District (if any) is that Plaintiff is a resident of this District, but *none* of the facts relating to the Cyber Attack or Plaintiff's claim stemming from it connect to this District.  The heart of the matter in this data breach class action lies where the attack occurred, and where decisions regarding data privacy and technology were made, which is at Mr. Cooper's headquarters in Texas.  Mot. at 7-9; Blunt Decl. ¶ 5.  Third, as Plaintiff is aware from conversations that occurred between his counsel and the undersigned law firm before this lawsuit was filed, the Consolidated Action includes named-plaintiffs who are residents of California and seeks to certify a nationwide class that would include California residents—*i.e.*, every putative class member in this Action.  Plaintiff has no good reason for bringing this separate class action, when the putative class members indisputably are part of the proposed class in the Consolidated Action.[9]  Accordingly, Plaintiff's chosen forum is only entitled to minimal deference.

***Forum's contact with claims.***  Plaintiff next argues that the parties' respective contacts with the chosen forum and the contacts relating to the cause of action in the chosen forum weigh against transferring the case.  Opp. at 8.  But this ignores that weight must be given to the extent that the

---

[9] The *Cabezas* class is described as, "[a]ll ascertainable persons impacted by the [d]ata [b]reach, including all who were sent a notice of the [d]ata [b]reach."  *Cabezas* Compl. ¶ 49; Mot. at 14.

parties' contacts are related to the asserted claim.  *See Romoff v. Johnson & Johnson Consumer Inc.*, No. 3:22-cv-00075, 2022 WL 3905301, at *3 (S.D. Cal. Aug. 26, 2022) ("Consideration must also be given to the extent of the parties' contacts with the forum, including those related to the plaintiff's cause of action." (citing *Belzberg*, 834 F.2d at 739 (additional citation omitted))).

Contrary to Plaintiff's assertion, Mr. Cooper has minimal contacts with California that are *relevant* to the claim at issue here.  "Mr. Cooper's [alleged] choice to solicit business in California," (Opp. at 8), has next to no relevance to Plaintiff's CCPA claim relating to the Cyber Attack.  *See Ace Mold (Heifei) Co. v. AliphCom*, No. 2:15-cv-08127, 2016 WL 8252923, at *2-3 (C.D. Cal. Oct. 17, 2016) (although defendant "frequently conducts business" in Central District of California, its contacts were "minimal at best" because it was headquartered in San Francisco).

Similarly, Plaintiff's residence in California has no relevance to his claim.  The crux of the case concerns the Cyber Attack; not Plaintiff's residence in California.  Said differently, the consequences of Mr. Cooper's alleged wrongdoing on Plaintiff would be identical in any state, no matter his residency.  *See Meza v. Procter & Gamble Co.*, No. 5:23-cv-00091, 2023 WL 3267861, at *7 (C.D. Cal. Apr. 27, 2023) ("But there is nothing about [Plaintiff's] experience unique to this District, and the nationwide class on whose behalf she files suit purportedly suffered the exact same harm in seemingly every single district across the nation."); *Jovel v. i-Health, Inc.*, No. 2:12-cv-05526, 2012 WL 5470057, at *6 (C.D. Cal. Nov. 8, 2012) ("[A]lthough it is undisputed that Plaintiff filed the case in her home District . . . , the crux of the case lies not in her act of purchasing the product in Los Angeles, but instead in issue of the alleged misrepresentations, which she would have perceived in identical form in any state.").

Furthermore, the parties' contacts to the chosen forum must be considered in relation to the location of the operative facts.  *See Romoff*, 2022 WL 3905301, at *3 ("While the Court does not discount the local impact of Defendant's alleged actions in this district, those effects do not

outweigh the fact that Defendant's alleged false and misleading statements originated in the Eastern District of Pennsylvania." (citation omitted)). The facts pertinent to claims relating to the Cyber Attack are located where the Cyber Attack occurred and where the data privacy and technology decisions were made by Mr. Cooper, including in responding to and resolving the Cyber Attack under the direction of the Chief Information Security Officer, who is located in Texas. Mot. at 8-9; Blunt Decl. ¶ 7. Thus, contrary to Plaintiff's position, this fact weighs in favor of transfer.

*Cost of litigation.* Plaintiff claims that the cost of litigation factor weighs against transfer because modern technology will reduce costs generally. This argument is speculative and should therefore be discounted; it does not account for the need to interview employees in order to gather documents and information, nor does it address that Mr. Cooper's witnesses would have to travel a significant distance from where they are based in Texas (Blunt Decl. ¶ 7) and incur both travel costs and lost productivity. These are *substantial* costs that Plaintiff entirely omits.

Further, it is not the case that a transfer would simply shift the potential cost from Mr. Cooper to Plaintiff and the putative class. That oversimplifies this factor and ignores that courts regularly transfer venue when, as is the situation here, there are more potential witnesses and sources of proof in the transferee venue, even if doing so would increase the cost of litigation on the plaintiff. *See D.L. Markham, DDS, MSD, Inc. v. Variable Annuity Life Ins. Co.,* No. 2:21-cv-00007, 2022 WL 891290, at *7 (E.D. Cal. Mar. 25, 2022) (finding "Plaintiffs' argument that Defendants are better equipped to bear the cost of litigation because of their national presence and larger resources is unpersuasive" and transferring case to Texas where "most of the relevant witnesses are located in Texas"); *In re Nissan N. Am., Inc. Litig.,* No. 3:18-cv-07292, 2019 WL 4601557, at *10 (N.D. Cal. Sept. 23, 2019) (rejecting argument that "transfer would unfairly shift the cost of litigation 'from the large corporations with national and international presence to [the plaintiffs],'" where litigation costs would likely be lower in transferee court because majority of

7

potential witnesses were located there); *Alcatel Lucent USA, Inc. v. Dugdale Commc'ns, Inc.,* No. 2:09-cv-02140, 2010 WL 883831, at *12 (C.D. Cal. Mar. 5, 2010) (cost of litigation factor favors transfer even though where substantial number of witnesses would not have to expend the time and resources required to travel to California); *Ari v. Archon Info. Sys., LLC,* No. 5:10-cv-01572, 2011 WL 13223874, at *8 (C.D. Cal. Mar. 2, 2011) (cost of litigation factor favors transfer where "the relative cost to Defendants of litigating in the two forums weighs in favor of transfer" where more potential witnesses and sources of proof are located in transfer jurisdiction.

Plaintiff's offer to depose Mr. Cooper and Mr. Cooper's employees and witnesses in Texas does not resolve this factor in Plaintiff's favor; Mr. Cooper and witnesses located in Texas would still have to travel for other case-related events, including potentially at trial.  In addition, while Plaintiff agrees that this claim and the claims in the Consolidated Action all arise out of the Cyber Attack, he ignores that transferring the case to the Northern District of Texas—where it could be consolidated for judicial efficiency and economy for all parties—would reduce the cost of litigation. Absent a transfer, Mr. Cooper would be forced to undergo separate discovery in two different actions on two different timelines for the same witnesses and records.  Thus, this factor strongly favors transfer even if Plaintiff may bear some additional cost.  *See Barnstormers, Inc. v. Wing Walkers, LLC*, No. 3:09-cv-02367, 2010 WL 2754249, *3 (S.D. Cal. July 9, 2010) ("If the case remains in this District, both parties will incur discovery costs and travel expenses … The potential for reducing the cost of litigation on the whole weighs in favor of transfer").

***Availability of Compulsory Process.***  Plaintiff does not dispute that the majority of witnesses will be in Texas.  Logically, then, the compulsory process is (or far more likely to be) available in Texas, and unlikely available in California.  To the extent that non-party witnesses will be needed at trial (such as current or former Mr. Cooper employees), any concern that such material witnesses are outside the Court's subpoena power would be greatly minimized if this case were

8

transferred.  *See Gerson v. Logan River Acad.,* No. 2:19-cv-05008, 2020 WL 473134, at *4 (C.D. Cal. Jan. 29, 2020) (compulsory process factor favors transfer where "it is unknown whether a majority of material witnesses are or are not still employed by Logan and still live in Utah, where the majority of the operative facts occurred … Thus, if the case remains in California, there is a greater chance that material non-party Utah witnesses may be outside the Court's subpoena power … This concern is greatly minimized if the action is transferred to the District of Utah").

Plaintiff's contention that the possible use of deposition transcripts at trial mitigates against a transfer under this factor is speculative, premature, and not entitled to any weight in the transfer analysis.  As a threshold matter, Plaintiff identifies no witnesses (none) that he would propose presenting at trial through deposition testimony rather than live testimony, and gives no consideration that now is not the time to force parties to make decisions on the presentation of evidence at trial.  Mr. Cooper may want to present witnesses live at trial, and in any event, the possibility of presenting deposition testimony at trial still favors transfer because the trial process would be "much simpler" in Texas because the relevant witnesses and documents are located there. *See Nat'l Fire Ins. Co. of Hartford v. UPS Freight, Inc.*, No. 5:16-cv-04785, 2017 WL 1927683, at *5 (N.D. Cal. May 10, 2017) (granting transfer where although deposition testimony could be compelled by court's nationwide subpoena power "because the relevant documents and cargo, and at least some of the witnesses are located in Delaware, the process would be much simpler if this case were heard in the District of Delaware.").

***Ease of Access to Sources of Proof.***  Plaintiff also distorts the ease of access to sources of proof factor by claiming that this factor is neutral or carries minimal weight because responsive documents are likely to be electronic.  Opp. at 11.  Although courts have recognized that technological advances have reduced the burden related to the sources of proof factor, there remains a cost to producing electronic documents, causing this factor to weigh in favor of transfer.  *See*

9

*Shanze Enters., Inc. v. Am. Cas. Co. of Reading, PA*, No. 2:14-cv-02623, 2015 WL 1014167, at *6 (E.D. Cal. Mar. 5, 2015) (although technological advances have reduced burden related to sources of proof factor, "nonetheless [this factor] weighs slightly in favor of transfer … under litigation costs"); *Barroca v. United States*, No. 3:19-cv-00699, 2019 WL 5722383, at *4 (N.D. Cal. Nov. 5, 2019) (even though "electronic conveyance have reduced the cost of document transfer somewhat … considerably more sources of proof are likely to be readily accessible in Kansas than in the Northern District. Accordingly, the [ease of access to sources of proof factor] weighs in favor of transfer.") (citation omitted).  At this time, there is no evidentiary basis for this Court to conclude that any electronic records needed for the litigation are accessible remotely, outside of Texas, or that the custodians required to identify such records are located outside of Texas—they are not. *See* Mot. at 9-10.

Moreover, not all sources of proof in this matter are documents.  Rather, there will be depositions of Mr. Cooper employees—which Plaintiff concedes he will take in Texas—and the potential inspection of equipment—which Plaintiff also concedes "can be readily completed wherever the system(s) may be located" (Opp. at 10), which is not in California (Blunt Decl. ¶ 8). Undeniably, the majority of these sources of proof reside in Texas.  *See Peace v. Parascript Mgmt., Inc.*, No. 2:12-cv-09663, 2013 WL 12137565, at *4 (C.D. Cal. Mar. 18, 2013) ("ease of access to documents … factor carries weight in an action like this one where the proof likely consists of discussions and decisions among [defendant's] employees, [and] attorneys") (citation omitted); *Ace Mold (Heifei) Co.*, 2016 WL 8252923, at *3 ("access to sources of proof favors [transfer], as Defendant's headquarters provide easier access to documentary and testimonial evidence necessary to litigate the case") (citation omitted).

***Additional Interest of Justice Factors.***  Plaintiff does not contest that this Court may consider the additional interest of justice factors that courts in this District have considered,

including the court congestion in each forum.  Mot. at 5; *Green Aire for Air Conditioning W.L.L. v. Salem*, No. 1:18-cv-00873, 2020 WL 4734909, at *6 (E.D. Cal. Aug. 14, 2020) (Oberto, M.J.).  Plaintiff thus concedes Mr. Cooper's arguments in its opening memorandum that the pendency of a related action and court congestion factors favor transfer.  *See Hope*, 2022 WL 597579, at *2 (granting transfer where "Plaintiffs fail to address the public and private interest factors and instead argue the Eastern District of California has subject matter and personal jurisdiction over Defendant and the exercise of jurisdiction in this district would be reasonable"); *Tatum v. Schwartz,* No. 2:06-cv-01440, 2007 WL 419463, at *3 (E.D. Cal. Feb. 5, 2007) ("[Plaintiff] tacitly concedes this claim by failing to address defendants' argument in her opposition.").

Although Plaintiff argues that this Court's strong interest in protecting California citizens under the CCPA weighs against transfer, that is of no moment.  While California courts have an interest in protecting California plaintiffs, an equally persuasive argument exists that Texas courts have an interest in addressing the conduct of companies that operate in their state.  *N. Bay Credit Union v. MRB Direct*, No. 8:23-cv-01951, 2024 WL 1136137, at *3 (C.D. Cal. Jan. 26, 2024) ("while recognizing California's interest in protecting its residents and businesses … Nevada courts have at least an equal interest in hearing cases involving Nevada businesses").  Further, federal judges in Texas are equally able to protect California consumers in this matter.  *Smith v. Oakley Transp., Inc.*, No. 3:19-cv-05854, 2020 WL 563076, at *2 (N.D. Cal. Jan. 30, 2020) ("Plaintiff and the putative class members would face no prejudice or disadvantage in protecting California's interest, because the excellent judges in [Florida] can apply California law, and can appreciate and vindicate California's interest in the matter.") (citation omitted).  Accordingly, this factor favors transfer because the Texas court is able to protect California consumers and has a strong interest in policing the conduct of Mr. Cooper, a Texas corporation.  *N. Bay*, 2024 WL 1136137, at *3; *see also Tropos Networks, Inc. v. IPCO, LLC*, No. 3:05-cv-04281, 2006 WL 1883316, at *4 (N.D. Cal.

July 7, 2006) (local interest factor favored transfer where "despite the fact that California would have an interest in protecting its residents from [alleged] conduct, Georgia also has an interest in its corporations and the activities they undertake.") (citation omitted); *Jarvis v. Marietta Corp.*, No. 3:98-cv-04951, 1999 WL 638231, \*7 (N.D. Cal. Aug. 12, 1999) (local interest factor weighed in favor of transfer despite plaintiff being a California citizen where actions which substantiate the plaintiff's claim occurred predominantly in New York and involved a New York Corporation).

Accordingly, the balance of Section 1404(a) factors—particularly the access to sources of proof, the connection between the alternative forum (the Northern District of Texas) and the subject of the claim (and lack of connection between the claim and this District), the overall reduced cost of litigation, the interests of justice, including ease of consolidation with the related Consolidated Action, and the availability of compulsory process to compel non-party witnesses strongly favors transfer of this action to the Northern District of Texas.

**II.   The First-Filed Doctrine and Judicial Comity Support Transferring this Action to the Northern District of Texas.**

It is in this Court's discretion to transfer this action for judicial efficiency and comity under the first-filed doctrine.  Plaintiff does not credibly dispute that the doctrine applies and supports a transfer.

**A.   There is No Dispute That the Cabezas Action was Filed First.**

Plaintiff brushes off the first factor, stating that while he does not dispute his suit was the last-filed class action of the twenty-seven putative class actions against Mr. Cooper arising from the Cyber Attack, this factor does not support transfer under the first-to-file doctrine because there is currently no CCPA claim in the *Cabezas* Action or in the Consolidated Action.  Opp. at 13. Plaintiff's articulation of this factor is wrong on the law.  As discussed *infra* at 14-15, the exact same claims exist are not required for the first-filed doctrine to apply.  Here, the same core factual

12

allegations underlie this action and those in the Consolidated Action, which is alone sufficient.[10]

Mot. at 14-16.  As this suit was filed months after the *Cabezas* Action, the factor of chronology

strongly favors transfer to the Northern District of Texas.  Mot. at 14.

### B.   Similarity of the Parties Favors Application of the First-to-File Rule.

To apply the first-to-file rule, the parties need not be identical; substantial similarity among

the parties is sufficient.  *See Mack v. Amazon.com, Inc.*, No. 2:17-cv-02515, 2017 WL 8220436, at

*2 (C.D. Cal. Sept. 19, 2017) ("[e]xact identity is not required to satisfy the first-to-file rule"

(citation omitted)).  Although Plaintiff argues that the putative nationwide class in the *Cabezas*

Action is "not substantially similar" to the putative class here because the class definition in

*Cabezas* is "not tailored to a CCPA claim" (Opp. at 14), Plaintiff is wrong.  In a gross

understatement, Plaintiff acknowledges "there may be overlap," (*id.*); but based on the proposed

class definitions, there is *complete* overlap—every putative class member in the *Randles* Action

would be encompassed by the putative nationwide class in the Consolidated Action.  The proposed

class definition in the *Cabezas* Action includes "[a]ll ascertainable persons impacted by the data

breach," *i.e.*, Randles and every putative class member here.  *Cabezas* Compl. ¶ 49; Mot. at 14.[11]

For purposes of the first-to-file rule, the "similarity of parties" requirement is thus satisfied.  *See,*

*e.g., Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1147-48 (E.D. Cal. 2010) (finding

---

[10] Plaintiff's suggestion that the first-filed doctrine should only apply when the claims are duplicative would encourage forum shopping, and thereby harm the interests of absent putative class members.  That appears to have occurred here—by asserting only a California claim on behalf of a California-only class, Plaintiff attempts to prevent this case from moving to Texas.  In doing so, Plaintiff ignores that the putative members of his proposed class have other putative claims asserted on their behalf in the Consolidated Action, which he has chosen not to assert here and now uses as a shield against transfer.

[11] Plaintiff asserts that "some courts have adopted the approach that comparison of the classes is not appropriate until a class has been certified."  Opp. at 13.  However, as he acknowledges (Opp. at 14), this is the minority approach, as "[t]he majority of district courts in the Ninth Circuit that have applied the first-to-file rule in the context of a class action have compared the putative classes . . . ."  *Stevens v. Warner Music Grp. Corp.*, No. 2:20-cv-11805, 2021 WL 9958639, at *2 (C.D. Cal. Feb. 24, 2021) (citation omitted). Plaintiff's efforts to prematurely move to certify a class here (prior to Mr. Cooper answering the Complaint or any discovery taking place) appears to be an attempt to distinguish the procedural posture of the *Randles* Action from that of the Consolidated Action, another step designed to avoid a transfer.

13

sufficient similarity between a nationwide class and a California class where the putative class "represent[s] at least some of the same individuals."); *Stevens*, 2021 WL 9958639, at *2 (finding the parties were substantially similar in a data breach class action with a CCPA claim where at least two of the named plaintiffs in the first-filed action were California residents and the putative classes the later-filed plaintiff sought to represent fell within the putative classes in the first-filed action).

### C. Similarity of the Issues Favors Application of the First-to-File Rule.

Plaintiff does not deny that the issue of whether Mr. Cooper is liable in any of the actions filed as a result of the Cyber Attack is at the center of both this case and the Consolidated Action. Mot. at 15-16; Opp. at 15 ("it is true that each of these cases stems from the same data breach incident").  Instead, Plaintiff's argument is based entirely on the incorrect, and premature, proposition that there is no CCPA claim in the Consolidated Action at this time.  Opp. at 14.[12] However, perfect identity of claims is not required to apply the first-to-file rule, particularly where, as here, the same core factual allegations underlie all of the related actions. *See Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). "To determine whether two suits involve substantially similar issues, [courts] look at whether there is "substantial overlap" between the two suits." *Id.* at 1241 (citation omitted). "Substantial similarity of the issues requires more than simply a comparison of the causes of action; rather the cases must share similar factual underpinnings of those claims." *Tirado v. Victoria's Secret Stores, LLC*, No. 1:21-cv-00636, 2023 WL 2466290, at *5 (E.D. Cal. Mar. 10, 2023).

Plaintiff does not address this standard in the Opposition, instead taking the position that there is "nothing inconsistent about letting this case proceed independently in California on its CCPA claim while *Cabezas* proceeds on its nationwide common law claims." Opp. at 15-16.  But

---

[12] The timing is ripe for transfer of this action and consolidation with the Consolidation Action now, as a consolidated complaint is anticipated in the Consolidation Action, and any CCPA claim would become part of that amended complaint.  *See* Mot. at 16.

14

that is precisely why the first-filed doctrine exists—this scenario invites competing courts to come to inconsistent rulings and issues conflicting decisions regarding the same overlapping putative class members. Tellingly, Plaintiff cites to no cases where two overlapping putative classes asserting similar claims relating to the same incident have been simultaneously adjudicated in more than one court. Parallel proceedings based on the same underlying facts and events, involving the same group of persons—which is what Plaintiff proposes here—is why courts routinely exercise their sound discretion to follow the first-to-file doctrine to avoid the malaise that scenario could create. Thus, this factor favors transfer. *See Trouville v. Reprosource Fertility Diagnostics, Inc.*, No. 1:23-cv-00080, 2024 WL 1181940, at *4 (E.D. Cal. Mar. 19, 2024) (finding that the issues "substantially overlap" despite differing state law claims because both actions are asking respective courts "to resolve the same issue(s) . . . ReproSource's liability to its patients for the alleged disclosure of its patients' personal, private information, leaked during the August 2021 data breach."); *Stevens*, 2021 WL 9958639, at *3 (finding substantial overlap of issues despite non-uniformity of claims where "[t]he core issue in both this case and the New York Actions is whether WMG is liable to the plaintiffs as a result of the 2020 cybersecurity breach of WMG's data."); *Sporn v. TransUnion Interactive, Inc.*, No. 4:18-cv-05424, 2019 WL 151575, at *6 (N.D. Cal. Jan. 10, 2019) (finding that the addition of a California Consumer Credit Reporting Agencies Act claim did not hinder application of the first-to-file rule because "the factual basis thereof and the legal issues presented therein are substantially the same").

## **CONCLUSION**

For the foregoing reasons, the venue of this case should be transferred to the Northern District of Texas, Dallas Division under either Section 1404(a) or the first-filed doctrine.

1    Date: April 8, 2024

2                                                   Respectfully submitted,

3                                                   /s/ *Laura A. Stoll*

4                                                   Laura A. Stoll (SBN 255023)
                                                    *LStoll@goodwinlaw.com*
5                                                   **GOODWIN PROCTER LLP**
                                                    601 South Figueroa Street, 41st Floor
6                                                   Los Angeles, CA 90017
                                                    Tel.: (213) 426-2500
7                                                   Fax: (213) 623-1673

8                                                   W. Kyle Tayman*
9                                                   *ktayman@goodwinlaw.com*
                                                    **GOODWIN PROCTER LLP**
10                                                  1900 N Street, NW
                                                    Washington, DC 20036
11                                                  Tel.: (202) 346-4245
                                                    F.: (202) 204-7309
12
                                                    Allison J. Schoenthal*
13                                                  *aschoenthal@goodwinlaw.com*
                                                    **GOODWIN PROCTER LLP**
14                                                  The New York Times Building
                                                    620 Eighth Avenue
15                                                  New York, New York, 10018
                                                    T.: (212) 459-7183
16                                                  F.: (212) 937-3850
                                                    *Pro Hac Vice Motions Filed
17

18                                                  *Attorneys for Defendants*
19

20

21

22

23

24

25

26

27

28

16

1

## **CERTIFICATE OF SERVICE**

2

3

The undersigned hereby certifies that the foregoing Reply Memorandum in Further Support of

4

Defendant's Motion To Transfer Venue To The Northern District Of Texas, Dallas Division,

5

Pursuant to 28 U.S.C. § 1404(A), or in the Alternative, Pursuant to the First-Filed Doctrine was

6

electronically filed and served upon all counsel of record via the Court's *electronic filing system*

7

*and/or e-mail* pursuant to the Federal Rules of Civil Procedure this 8th day of April 2024.

8

9

/s/ *Laura A. Stoll*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28