1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| ADRIAN SCOTT RANDLES, individually and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>NATIONSTAR MORTGAGE, LLC, dba MR. )<br>COOPER, a Delaware limited liability )<br>company, and MR. COOOPER GROUP, INC., )<br>a Delaware Corporation, )<br><br>Defendants. ) | Case No.: 1:24-cv-0177-KES-SKO<br><br>ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE<br><br>(Doc. 15) |

18

19          Plaintiff Adrian Scott Randles brings this putative class action against Defendants Nationstar

20   Mortgage, LLC, dba Mr. Cooper, and Mr. Cooper Group, Inc. (collectively, "Defendants" or "Mr.

21   Cooper"), alleging a violation of the California Consumer Privacy Act in connection with a data breach

22   resulting from a cyber attack on Defendants.  Doc. 1 (complaint).  Defendants move pursuant to 28

23   U.S.C. § 1404(a) for a transfer of venue to the Northern District of Texas, Dallas Division, where

24   multiple other putative class actions concerning the same data breach are currently pending.  Doc. 15.

25   In the alternative, Defendants request transfer under the first-to-file rule.  *Id.*  Plaintiff filed an

26   opposition to the motion, to which Defendants replied.  Docs. 18, 24.  The Court heard argument on the

27   motion on April 17, 2024.  For the reasons set forth below, the Court GRANTS Defendants' motion to

28   transfer venue.

## I.    **Background**

Plaintiff is a resident of Los Banos, California, and held a mortgage loan serviced by Defendants.  Doc. 1 at 7.  Defendants are incorporated in Delaware and have their principal place of business in Coppell, Texas, which is in the Northern District of Texas, Dallas Division.  *Id.* at 6; Doc. 15-2 at 2.  The majority of Defendants' employees, including the cyber security team, are based in Texas.  Doc. 15-2.

Plaintiff alleges Defendants collected sensitive personal information, including the names, addresses, bank account information, and Social Security Numbers of Plaintiff and others in connection with servicing their mortgage loans.  Doc. 1 at 7.  On or about December 16, 2023, Plaintiff received a letter notifying him that a data security incident between October 30, 2023, and November 1, 2023, had resulted in the unauthorized disclosure of Plaintiff's and others' personal information.  Doc. 1-2.  Plaintiff alleges this unauthorized disclosure was caused by Mr. Cooper's failure to maintain reasonable security procedures and practices to protect consumers' personal information, in violation of Cal. Civ. Code § 1798.150, the California Consumer Privacy Act ("CCPA").  Doc. 1 at 7-8, 10-11, 14-15.  Plaintiff filed this action on February 7, 2024.  Doc. 1.  The putative class consists of "[a]ll persons residing in California whose nonredacted and nonencrypted personal information was compromised in the data breach(es) affecting Mr. Cooper's network(s) in 2023."  *Id.* at 12.

Previously, on November 3, 2023, a putative nationwide class action was filed in the Northern District of Texas, Dallas Division, asserting claims arising from the data breach.  *See Cabezas v. Mr. Cooper Group, Inc.*, No. 3:23-cv-02453-N (N.D. Tex.) (the "*Cabezas* action").  The proposed national class in the *Cabezas* action includes "[a]ll ascertainable persons impacted by the Data Breach, including all who were sent a notice of the Data Breach."  Doc. 18-1 at 12.  The claims asserted in the *Cabezas* action include (1) negligence, (2) negligence per se, (3) breach of express contract, (4) breach of implied contract in fact, (5) invasion of privacy, (6) unjust enrichment, (7) breach of confidence, and (8) breach of fiduciary duty.  Doc. 18-1.  Between the filing of the *Cabezas* action and Plaintiff's filing of this action, approximately twenty-five additional putative nationwide class actions were filed

2

1   asserting claims against Mr. Cooper arising from the data breach.  Doc. 15-1 at 6 & n.1.  Those actions

2   have all been consolidated in the Northern District of Texas under the *Cabezas* action.  *Id.*

3   **II.    Legal Standard**

4       **A.      Motion to transfer venue**

5       Pursuant to 28 U.S.C. § 1404, "[f]or the convenience of parties and witnesses, in the interest of

6   justice, a district court may transfer any civil action to any other district or division where it might

7   have been brought."  28 U.S.C. § 1404(a).  The initial inquiry under § 1404(a) is whether the case

8   could have been brought in the forum to which transfer is sought.  *Id.; Hatch v. Reliance Ins. Co.*, 758

9   F.2d 409, 414 (9th Cir. 1985).  If venue is appropriate in the proposed transferee court, the statute

10  provides "discretion in the district court to adjudicate motions for transfer according to an

11  'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh*

12  *Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

13      Among the non-exclusive factors a district court may consider in determining whether a

14  transfer is warranted for the convenience of the parties and witnesses and in the interest of justice are:

15  (1) the plaintiff's choice of forum, (2) the respective parties' contacts with the forum, (3) contacts

16  relating to the plaintiff's cause of action in the chosen forum, (4) differences in the costs of litigation in

17  the two forums, (5) the availability of compulsory process to compel attendance of unwilling non-

18  party witnesses, (6) ease of access to sources of proof, (7) the location where relevant agreements, if

19  any, were negotiated and executed, and (8) the state that is most familiar with the governing law.

20  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).  Courts also consider the

21  feasibility of consolidation with a pending related action in the forum to which transfer has been

22  proposed.  *A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir.

23  1974); *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1214 (S.D. Cal. 2013) (transfer

24  supported where five similar cases against defendants were already consolidated and pending in other

25  district).  The party seeking a change of venue has the burden of demonstrating transfer is appropriate.

26  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

27

28

**B.      First-to-file rule**

Under the first-to-file rule, "when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997); *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). The rule is a "'generally recognized doctrine of federal comity' permitting a district court to decline jurisdiction over an action." *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292 (N.D. Cal. 2013) (quoting *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006)).

**III.   Discussion and Analysis**

**A.      Motion to transfer venue**

This action could have been brought in the Northern District of Texas.  Under the Class Action Fairness Act, minimal diversity is satisfied as Plaintiff is a resident of California, Defendants are Delaware corporations with their principal place of business in Coppell, Texas, and the aggregated claims exceed $5 million.  *See* 28 U.S.C. § 1332(d).  The Northern District of Texas has personal jurisdiction over Defendants as their principal place of business is located there.  Venue is proper in that district as the Defendants reside there and a substantial portion of the events or omissions giving rise to Plaintiff's claim occurred there.  28 U.S.C. § 1391; *see* Doc. 1.  Plaintiff does not dispute that this action could have been brought in the Northern District of Texas.  *See* Doc. 18.

The Court therefore turns to whether transfer is warranted for the convenience of the parties and witnesses and in the interests of justice.

*1.     Feasibility of consolidation with other actions*

Defendants argue that the pendency of 26 substantially similar actions in the Northern District of Texas, consolidated under the *Cabezas* action, weighs in favor of transfer.  Doc. 15-1 at 16.  The Court agrees.  Transfer to a court already trying similar claims based on the same incident would serve the convenience of the parties and witnesses, permit the potential consolidation of discovery, promote judicial economy, and avoid inconsistent and conflicting resolutions.  "The feasibility of consolidation is a significant factor in a transfer decision, although even the pendency of an action in another district

4

1   is important because of the positive effects it might have in possible consolidation of discovery and

2   convenience to witnesses and parties." *A.J. Indus.*, 503 F.2d 384 at 386–87 (internal citations

3   omitted); *Hawkins*, 924 F. Supp. 2d at 1214.  "To permit a situation in which two cases involving

4   precisely the same issues are simultaneously pending in different District Courts leads to the

5   wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v.*

6   *Barge FBL-585*, 364 U.S. 19, 26 (1960).

7          The *Cabezas* action was filed before Plaintiff filed suit, the putative nationwide class in the

8   consolidated *Cabezas* action includes the sub-class of California plaintiffs at issue in this case, and

9   numerous other cases arising from the same data breach have already been consolidated in the

10  Northern District of Texas under the *Cabezas* action.  Plaintiff argues the *Cabezas* action is not

11  substantially related because it does not include a CCPA claim.  Doc. 18 at 16.  However, while the

12  *Cabezas* action does not include a claim under the CCPA, the negligence claims and other claims in

13  *Cabezas* raise similar factual and legal issues as the CCPA claim on the core question regarding

14  whether Defendants breached their duty to implement and maintain appropriate security with respect

15  to the plaintiffs' personal information.[1]  The actions involve substantially similar evidence and

16  elements of proof.  Transfer will also minimize the risk of duplicative litigation and inconsistent

17  rulings concerning Defendant's conduct regarding the data security incident.  This factor accordingly

18  weighs in favor of a transfer of venue.

19                    *2.      Plaintiff's choice of forum*

20          Ordinarily courts attach a "strong presumption in favor of the plaintiff's choice of forum."

21  *Piper Aircraft v. Reyno* 454 U.S. 235, 255 (1981); *Decker Coal v. Commonwealth Edison Co.*, 805

22  F.2d 834, 843 (9th Cir. 1986).  However, in class actions a plaintiff's choice of forum is often

23  accorded less weight.  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).  In evaluating the weight to

24

25  _____

    [1] On the CCPA claim, plaintiff must establish the data breach was "a result of the business's violation
26  of the duty to implement and maintain reasonable security procedures and practices appropriate to the
    nature of the information to protect the personal information."  Cal. Civ. Code § 1798.150(a)(1).
27  Similarly, the negligence claim in the *Cabezas* action asserts that Mr. Cooper had a duty to exercise
    reasonable care and protect and secure class members' personal information, that Mr. Cooper
28  breached that duty by failing to employ industry standard data and cybersecurity measures, and that its
    breach resulted in the unauthorized third-party access to the class members' personal information.
    Doc. 18-1 at ¶¶ 61–67.

be accorded to the plaintiff's choice of forum in a class action a court must also consider the extent of both parties' contacts with the forum, including those contacts relating to the plaintiff's cause of action. *Id.* A plaintiff's choice "is entitled to only minimal consideration" if the Court finds "the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter." *Id.*

Plaintiff's cause of action concerns Defendants' alleged failure "to institute reasonable security procedures" and "to protect consumer data from unauthorized access and exfiltration." Doc. 1 at 10. Defendants have established that their cyber security management and mitigation efforts largely occurred in the Northern District of Texas. *See* Doc. 15-2. There is no comparable connection to this district. Where, as here, "the transactions giving rise to the action lack a significant connection to the plaintiff's chosen forum, the plaintiff's choice of forum is given considerably less weight." *Hawkins,* 924 F. Supp. 2d at 1215.

Plaintiff argues that his choice of forum is nonetheless entitled to deference because he is a California resident, he limited the proposed class to only California plaintiffs, and he alleges solely a California statutory cause of action. Doc. 18 at 8. A plaintiff's choice of forum in a class action may be entitled to some deference where a plaintiff has chosen the forum of his primary residence and not engaged in forum shopping. *White v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 20-cv-04048-SVK, 2020 WL 13578444, at *3 (N.D. Cal. Nov. 17, 2020) (citing *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1078-79 (S.D. Cal. 2011)). However, here the *Cabezas* action was filed several months before Plaintiff filed suit, and the putative nationwide class in the consolidated action appears to include all the members in Plaintiff's proposed California class. Plaintiff defines his California class as "[a]ll persons residing in California whose nonredacted and nonencrypted personal information was compromised in the data breach(es) affecting Mr. Cooper's network(s) in 2023." Doc. 1 at 12. Plaintiff and the proposed California class members are included in the *Cabezas* action's broad definition of its nationwide class as "[a]ll ascertainable persons" impacted by that same data breach, "including all who were sent a notice of the Data Breach." Doc. 18-1 at 12. Additionally, Defendants note that California residents are already serving as named plaintiffs in the consolidated

action in the Northern District of Texas.  Doc. 24 at 10.  Moreover, the consolidated *Cabezas* action will continue in the Northern District of Texas regardless of the outcome of this transfer motion.

Plaintiff fails to provide a persuasive reason for proceeding separately in this district rather than transfer this case to the Northern District of Texas, where it could be consolidated with the *Cabezas* action.  *See Hawkins*, 924 F. Supp. 2d at 1215 (finding transfer appropriate where there were no persuasive reasons to artificially split class into two sub-classes: the California plaintiffs and the non-California "nationwide" class).  Accordingly, this factor supports a venue transfer.

### 3. *The parties' contacts with the forum and contacts relating to plaintiff's cause of action*

Plaintiff argues that he resides in this district, has no contacts with Texas, and negotiated his loan with Defendants in this district.  Doc. 18 at 6.  He asserts that his proposed plaintiff class is similarly situated.  *Id.* at 7.  While Plaintiff resides in the Eastern District of California, the crux of the case has little to do with this district.  The fact that Defendants engaged in a loan transaction with Plaintiff in California does not establish that any significant relevant conduct occurred in this district.

The material allegations in Plaintiff's complaint concern conduct outside of California, largely in the Northern District of Texas.  Defendants have presented evidence that their principal place of business is in the Northern District of Texas, that their key personnel responsible for managing data security and responding to the cyberattack are based in that district, and that their operations and technology systems are largely located in, or run from, that district.  Doc. 15-2.  In contrast, Plaintiff fails to identify any relationship between the Eastern District of California and the conduct and evidence concerning Defendants' cyber security management and the data breach, which form the basis for plaintiff's claim.  *See* Doc. 1.  Accordingly, these factors support a venue transfer.

### 4. *Ease of access to evidence*

Defendants note that their primary information technology team, documents, and customer records are in the Northern District of Texas.  Doc. 15-2.  Defendants' operations and technology systems are in, or run from, their principal executive office in Coppell, which is in the Northern District of Texas, Dallas Division.  *Id.*  Plaintiff argues the location of the evidence is of minimal importance because, even if some transportation of documents is required, the evidence is likely in an

electronic format and technological advances in document storage and retrieval have greatly reduced the burden associated with the location of evidence.  Doc. 18 at 11.

Ease of access to evidence is generally not a predominate concern in evaluating whether to transfer venue because "advances in technology have made it easy for documents to be transferred to different locations."  *Byler v. Deluxe Corp.*, 222 F. Supp. 3d 885, 906-07 (S.D. Cal. 2016).  The evidence identified by Defendants is likely available in an electronic format easily transferrable between the parties and would almost certainly have to be transferred electronically in any matter.  Nonetheless, nearly all identified witnesses and relevant sources of proof are in the Northern District of Texas.  On balance, access to such evidence would be somewhat easier in the Texas district.  For these reasons, this factor weighs somewhat in favor of transfer.

### 5.      *Cost of litigation and time to trial*

Given that the relevant witnesses and evidence are largely in the Northern District of Texas, and that Plaintiff does not identify any significant evidentiary connection to this district, the Court agrees with Defendants that trying the case in the Texas court would be less burdensome, costly, and difficult for the parties.  Additionally, courts consider "the administrative difficulties flowing from court congestion" in considering the interests of justice.  *Decker Coal*, 805 F.2d at 843 (citing *Piper Aircraft*, 454 U.S. at 255).  Defendants note that, as of December 2023, the Eastern District of California had an average of 883 cases per judgeship and a median of 68.3 months from filing to trial for civil cases, while the Northern District of Texas has 584 cases per judgeship and a median of 27.3 months from filing to trial for civil cases.  Doc. 15-1 at 16.  These considerations similarly weigh somewhat in favor of transfer.

### 6.      *Convenience of witnesses*

Convenience of witnesses is one of the most important factors in the determination of whether to grant a change of venue.  *See, e.g., Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 501 (C.D. Cal. 1981).  A transfer of venue "may be denied when witnesses either live in the forum district or are within the 100-mile reach of the subpoena power" because individuals cannot be compelled to testify when they reside beyond the boundaries of the Court's subpoena power.  *Id.* at 501 (citing Fed. R. Civ. P. 45(e); *U.S. Industries, Inc. v. Procter & Gamble Co.*,

348 F. Supp. 1265 (S.D.N.Y. 1972)).  "To demonstrate inconvenience of witnesses, the moving party must identify relevant witnesses, state their location and describe their testimony and its relevance." *Carolina Cas. Co. v. Data Broad Corp.*, 158 F. Supp. 2d 1044, 1049 (N.D. Cal. 2001); *see also E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994) ("[a]ffidavits or declarations are required to identify key witnesses and a generalized statement of their anticipated testimony").  Here, neither party has identified any non-party witnesses by location and relevant testimony.  However, Defendants have established that its witnesses with knowledge of Defendant's security measures and the data breach are largely in the Northern District of Texas, whereas there are no comparable identified witnesses in this district.  Accordingly, this factor on balance supports transfer.

### 7.    *Familiarity with governing law*

Plaintiff argues this Court is more familiar with his California law claim than the Texas federal court and asserts this as a factor weighing against transfer.  Doc. 18 at 7.  This argument is unpersuasive.  "[C]ourts have repeatedly explained that the forum state's familiarity with California law is a neutral factor in a § 1404(a) transfer analysis, because 'it is routine for federal courts to analyze and apply the laws of diverse states.'"  *Kitzler v. Nelnet Servicing, LLC*, No. CV 22-6550-MWF (KS), 2022 WL 18284983, at *3 (C.D. Cal. Nov. 1, 2022).  The Northern District of Texas court is fully capable of deciding issues arising under California law.  *See Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1148 (C.D. Cal. 2009) (judges in both New York and California are fully capable of deciding issues arising under both California and New York law); *Saunders v. USAA Life Ins. Co.*, 71 F. Supp. 3d 1058, 1061 (N.D. Cal. 2014) (it is routine for federal courts to analyze and apply the law of diverse states).  This factor is therefore neutral.

### 8.    *Public interest*

Plaintiff also asserts that the public interest weighs against transfer, arguing that the Northern District of Texas has no interest in protecting California citizens under a California statute.  *Id.* at 12.  This argument is unpersuasive.  The Northern District of Texas is equally able to protect Plaintiff and the putative California class members in this matter.  *See Parr v. Stevens Transp., Inc.*, No. C-19-02610-WHA, 2019 WL 4933583 *4 (N.D. Cal. Oct. 7, 2019) (finding in a wage-and-hour class action "the excellent judges in Dallas can apply California law, and can appreciate and vindicate California's

interest in the matter.")  Moreover, the Northern District of Texas already has before it the *Cabezas* putative nationwide class action, which includes Plaintiff and the other putative California class members, as well as the numerous other cases consolidated under *Cabezas*.  Additionally, the operative facts in this action occurred in the Northern District of Texas, and Texas has an equal or greater interest in policing the conduct of the companies headquartered within that state. *See N. Bay Credit Union v. MRB Direct*, No. 8:23-cv-01951, 2024 WL 1136137, at *3 (C.D. Cal. Jan. 26, 2024) ("while recognizing California's interest in protecting its residents and businesses . . . Nevada courts have at least an equal interest in hearing cases involving Nevada businesses.").  For these reasons, this factor supports transfer.

For the foregoing reasons, the Court finds transfer to the Northern District of Texas is appropriate under 28 U.S.C. § 1404(a).

**B.      First-to-File Rule**

The Court also finds it appropriate to consider the first-to-file rule as an independent and alternative basis for transfer.  A district court examines three factors in deciding whether to apply the first-to-file rule: "chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015).

**1.      Chronology of the actions**

"The first factor simply requires a chronology of the actions."  *Young v. L'Oreal USA, Inc.*, 526 F. Supp. 3d 700, 704 (N.D. Cal. 2021).  Plaintiff does not dispute that the *Cabezas* action was filed first.  Doc. 18 at 13.  Accordingly, this factor weighs in favor of applying the first-to-file rule.

**2.      Similarity of the parties**

This second factor requires merely that the parties be substantially similar; they need not be identical.  *Kohn Law Grp.*, 787 F.3d at 1240.  In the class action context, district courts in this circuit generally compare the putative classes rather than the named plaintiffs.  *See Young*, 526 F. Supp. 3d at 705; *Wallerstein*, 967 F. Supp. 2d at 1295; *Pedro v. Millennium Prods., Inc.*, No. 15-cv-05253-MMC, 2016 WL 3029681, at *3 (N.D. Cal. May 27, 2016) (collecting cases).

As addressed above, Plaintiff and the California class members he seeks to represent are members of the putative nationwide class in the consolidated *Cabezas* action.  Plaintiff's filing on

behalf of a California-only class does not create dissimilarity between the parties in this action and those in the consolidated *Cabezas* action.  *See Young*, 526 F. Supp. 3d at 705 (parties similar where California plaintiff class in second action were members of nationwide class in first action); *Koehler v. Pepperidge Farm, Inc.*, No. 13-cv-2644-YGR, 2013 WL 4806895, at *4 (N.D. Cal. Sept. 9, 2013) (parties similar where first-filed action sought to represent nationwide class and subsequent case sought to represent only California class); *Wallerstein*, 967 F. Supp. 2d at 1296 (finding substantially similar parties where both classes sought to represent at least some of the same individuals).

Accordingly, the Court finds there is substantial similarity between the parties involved in both cases, and the second requirement of the rule is satisfied.

### 3.  *Similarity of the issues*

The final factor is whether the actions involve similar issues.  Courts have held that "the issues between the two cases need not be identical, only substantially similar."  *Young*, 526 F. Supp. 3d at 705; *see also Wallerstein*, 967 F. Supp. 2d at 1296; *Kohn Law Grp.*, 787 F.3d at 1240.  Defendants assert the actions clearly raise similar issues and claims concerning the data breach and Mr. Cooper's alleged actions, or failure to act, with respect to securely maintaining the putative class members' personal information.  Doc. 15 at 20.  Plaintiff argues that, nonetheless, the actions are not similar because his action asserts solely a CCPA claim, while the *Cabezas* action does not include such a claim.  Doc. 18 at 15.  The Court agrees with Defendants that the legal issues and remedies in the cases are substantially similar.  Plaintiff's sole claim, a CCPA violation, raises factual and legal issues substantially similar at least to those at issue in the negligence claim in the consolidated *Cabezas* action.  The core factual issues concern the same data breach and Mr. Cooper's alleged violation of its duty to maintain reasonable security procedures.

Similarly, in *Wallerstein* the court found two lawsuits to be substantially similar where both cases arose from the same alleged mislabeling by the defendant, even though the plaintiff in the second-filed case brought additional claims under New York law while the initial action raised only California claims.  *Wallerstein*, 967 F. Supp. 2d at 1297.  In *Schwartz v. Frito-Lay N. Am.*, No. C-12-02740 EDL, 2012 WL 8147135, at *3 (N.D. Cal. Sept. 12, 2012), the court likewise found two actions to be substantially similar where both cases arose from the same allegedly misleading conduct by the

1    defendant.  The court found that a contrary holding would undermine the purpose of the first-to-file

2    rule. *Id.* (citing *Worthington v. Bayer Healthcare, LLC,* No. 11-3017, 2012 WL 1079716, at *6

3    (D.N.J. Mar. 30, 2012) ("Finding an insubstantial overlap because of the fact that the claims are

4    asserted under different state laws would defeat the judicial efficiency rationale undergirding the first-

5    filed rule.")).

6            For these reasons, the Court finds, in the alternative, that all three requirements of the first-to-

7    file rule are met and that the present case should be transferred to the Northern District of Texas under

8    that rule.

9    **IV.   Conclusion and Order**

10          Based upon the foregoing, the Defendants have met their burden of demonstrating that a

11   transfer of venue is appropriate under 28 U.S.C. § 1404(a).  The court further finds, in the alternative,

12   that transfer of venue would be appropriate under the first-to-file rule.

13          Accordingly, Defendants' motion to transfer venue, Doc. 15, is GRANTED.

14

15

16   IT IS SO ORDERED.

17       Dated:    April 25, 2024

18                                                    UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28

12